**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **MICHAEL EDWARDS, on behalf of himself and all others similarly situated,** )<br>)<br>) | |
| **Plaintiff,** ) | |
| ) | |
| v.                                                       ) | Case No. 08-CV-730-TCK-PJC |
| ) | |
| **FARMERS INSURANCE COMPANY, MID-CENTURY INSURANCE COMPANY, and FARMERS INSURANCE EXCHANGE,** )<br>)<br>)<br>) | |
| **Defendants.** ) | |

**OPINION AND ORDER**

Before the Court is Plaintiff's Motion To Amend Petition ("Motion to Amend") (Doc. 27) and the Motion to Dismiss of Defendant Farmers Insurance Exchange ("Motion to Dismiss") (Doc. 2).

**I.    Factual Background**

Plaintiff Michael Edwards filed this class action lawsuit in the District Court for Tulsa County on October 23, 2008. In his Petition, Plaintiff alleged that Defendants Farmers Insurance Company ("Farmers"), Mid-Century Insurance Company ("MCIC"), and Farmers Insurance Exchange ("FIE") (collectively "Defendants") breached contracts of insurance and breached their duty of good faith and fair dealing. Specifically, Plaintiff contends that Defendants denied his claims on grounds that his policies were no longer in effect and that such denial was wrongful because Defendants relied upon an ineffective Notice of Cancellation Form ("Cancellation Notice") to cancel his coverage. Plaintiff alleges that the Cancellation Notice was ineffective because it did "not provide the definitive notice necessary to cancel coverage" and "was contrary to the policy and law of Oklahoma." (Pet. ¶ 8.) According to Plaintiff, "Defendants breached the insurance contract

with its insured every time it denied benefits relying on the [Cancellation Notice]" and that such breach "was so contrary to the plain terms of the contract and the law it amounts to bad faith." (*Id.* ¶¶ 20, 22.) Plaintiff brought the action on behalf of himself and all Oklahoma residents whom Defendants denied the following types of claims from October 22, 2003 to the present: (1) automobile comprehensive and/or collision coverage claims; (2) automobile medical payment claims; and (3) automobile liability insurance coverage claims. (*See id.* ¶ 11.) At the time the Petition was filed, Plaintiff was represented only by the law firm of Gibbon, Barron, & Barron ("Gibbon Firm").

On December 8, 2008, FIE filed the Motion to Dismiss, arguing that it could not be held liable for breach of contract or bad faith because it was not party to the relevant insurance contracts. On December 10, 2008, the case was removed to this Court without objection. On May 22, 2009, the Court entered a Scheduling Order with an April 2010 trial date. On June 15, 2009, members of the law firm of Whitten, Burrage, Priest, Fulmer, Anderson, & Eisel ("Whitten Firm") entered appearances on behalf of Plaintiff. Two days later, on June 17, 2009, the deadline for filing motions to amend pleadings expired. On July 27, 2009, Plaintiff filed an unopposed motion to extend all non-expired deadlines by ninety days,[1] which the Court granted. Under the current Scheduling Order, the discovery deadline is February 26, 2009, a hearing on class certification is set for April 13, 2010, and trial is set for July 19, 2010.

On July 28, 2009, Plaintiff filed the Motion to Amend, seeking to (1) add claims for fraud/constructive fraud and unjust enrichment (*see* Proposed Am. Compl. ¶¶ 49-57, 58-65); (2) obtain injunctive relief (*see id.* ¶¶ 66-69); and (3) expand upon the class allegations, adding more

---

[1] Defendants would not agree to an extension of the deadline for motions to amend.

detailed information regarding the proposed class representative, the nature of the class claims, and the common questions of law and fact (*see id.* ¶¶ 10-36).[2]

## II.   Motion to Amend

Pursuant to Federal Rule of Civil Procedure 15(a)(2), a court should "freely give leave [to amend] when justice so requires." District courts have wide discretion to allow amendment "in the interest of a just, fair or early resolution of litigation." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009). District courts generally deny leave to amend only on "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Duncan v. Manager, Dep't of Safety, City, and County of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005) (quotation omitted). Defendants assert three grounds for denying leave to amend: (1) untimeliness, (2) undue prejudice, and (3) futility.

### A.   Timeliness

The timeliness issue presented under Rule 15(a) is whether Plaintiff's delay in seeking amendment was "undue." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006) (explaining that "[e]mphasis is on the adjective" in the "undue delay" analysis). According to the Tenth Circuit, "[t]he longer the delay, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." *Id.* (internal quotation omitted). In determining

---

[2] The proposed class is the same as that alleged in the original Petition. However, the proposed Amended Petition splits the first sub-class in the original Petition into two separate groups, such that the sub-classes consist of: (1) those denied automobile comprehensive coverage claims; (2) those denied automobile collision coverage claims; (3) those denied automobile medical payment claims; and (4) those denied automobile liability insurance coverage.

3

whether a delay is "undue," the Tenth Circuit "focuses primarily on the reasons for the delay." *Id.* at 1206. "[D]enial of leave to amend is appropriate when the party filing the motion has no adequate explanation for the delay" or when a moving party fails to "demonstrate excusable neglect." *Id.* (citing *Fed. Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987)).[3]

Plaintiff's delay in seeking amendment was not "undue" for purposes of Rule 15(a) for two reasons. First, any delay in seeking amendment was not significant in relation to the overall progress of this litigation. The Court first entered a Scheduling Order on May 22, 2009, approximately two months prior to Plaintiff's filing of the Motion to Amend. The Motion to Amend was filed approximately one month after the Court's deadline, seven months before the discovery deadline, and one year before the agreed trial date. Thus, although the Motion to Amend was untimely in that it was filed one month after the Court's deadline, any "delay" in seeking amendment was minimal in relation to other deadlines governing the remainder of the case.

Second, Plaintiff provided an "adequate" explanation for untimeliness of the motion, in light of the relatively insignificant delay in seeking amendment. Plaintiff's proffered reason for the untimeliness is that the Whitten Firm entered its appearance two days before the June 17, 2009 deadline. Plaintiff argues that he "sought to amend just six (6) weeks after new counsel became involved in the case – as soon as Plaintiff's new counsel had the opportunity to review the documents, pleadings and conduct research on the potentially applicable causes of action and remedies." (Reply in Support of Mot. to Amend 3.) Although the Tenth Circuit has stated that

---

[3] In addition, a court may properly deny leave to amend where the plaintiff is using Rule 15 to: (1) make the complaint a moving target; (2) salvage a lost case by untimely suggestion of new theories of recovery; (3) present numerous new theories in an effort to avoid dismissal; or (4) knowingly delay raising an issue until the eve of trial. *See Minter*, 451 F.3d at 1206. Defendants do not assert that Plaintiff is engaging in any of these tactics.

4

"[t]he retention of a new attorney able to perceive or draft different or more creative claims from the same set of facts is itself no excuse for the late filing of an amended complaint," *see Rhodes v. Amarillo Hosp. Dist.*, 654 F.2d 1148, 1154 (10th Cir. 1981), the new attorney in that case sought to amend almost three years after the case was filed and three weeks before trial. Thus, the delay was considerably more significant than that presented here. In this case, the injection of additional counsel occurred at a relatively early stage of the litigation. In light of the minor delay involved in this case, the Court finds no reason to deprive Plaintiff of the perspective and research of newly retained counsel. Accordingly, under the specific circumstances presented, the Court finds the explanation for the delay – namely, the Whitten Firm's entry of appearance and new perspective on the case – to be "adequate."[4]

B.  Undue Prejudice

"The second, and most important, factor in deciding a motion to amend the pleadings, is whether the amendment would prejudice the nonmoving party." *Minter*, 451 F.3d at 1207. "Courts typically find prejudice only when the amendment unfairly affects the defendants in terms of preparing their defense to the amendment." *Id.* at 1208 (internal quotations omitted).

---

[4] The Tenth Circuit has not "decide[d] whether a party seeking to amend its pleadings after the scheduling order deadline must show 'good cause' for the amendment under Rule 16(b) in addition to the Rule 15(a) requirements." *Minter*, 451 F.3d at 1205 n.4 (explaining that some circuits require the party seeking amendment past a scheduling order deadline to (1) show that it was diligent in attempting to meet the deadline, and (2) provide an adequate explanation for its delay); *see Bylin v. Billings*, 568 F.3d 1224, 1231 n.9 (10th Cir. 2009) (noting that Tenth Circuit "has not ruled on that question in the context of an amendment to an existing pleading"). However, the Tenth Circuit has explained that there is a "rough similarity between the 'good cause' standard of Rule 16(b) and the 'undue delay' analysis under Rule 15." *Minter*, 451 F.3d at 1205 n.4. Thus, under Tenth Circuit law, the two standards are not substantially different. To the extent necessary, the Court finds that Plaintiff has shown good cause for a Rule 16(b) extension for the same reasons explained above in relation to Rule 15(a).

> Most often, this occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues. *Compare Hom v. Squire*, 81 F.3d 969, 973 (10th Cir. 1996) (finding prejudicial a motion "to add an entirely new and different claim to [the plaintiff's] suit little more than two months before trial"), *with Gillette v. Tansy*, 17 F.3d 308, 313 (10th Cir.1994) (finding no evidence of prejudice when the "Petitioner's [amended] claims track the factual situations set forth in his [original] claims"), *Childers v. Indep. Sch. Dist. No. 1*, 676 F.2d 1338, 1343 (10th Cir. 1982) (ruling that the district court's refusal to allow an amendment was "particularly egregious in this case because the subject matter of the amendment was already alleged in the complaint"), and *R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749, 751-52 (10th Cir.1975) (finding no prejudice when "[t]he amendments did not propose substantially different issues").

*Id.*

Defendants allege the following as prejudice resulting from amendment: (1) having to re-serve discovery requests regarding the more specific class allegations; (2) having to conduct discovery on the detrimental reliance of each individual class member in order to defend the fraud claim; and (3) having to conduct discovery on each individual class member's underlying insurance claim in order to defend the unjust enrichment claim. Defendants estimate that granting the Motion to Amend will require an extension of all remaining deadlines by six months to one year.

Defendants have failed to show undue prejudice resulting from the proposed amendments. First, Defendants have not shown that they will suffer any actual prejudice in preparing their defenses to the new claims. Instead, Defendants have merely alleged that they will need additional time to conduct discovery and prepare defenses. This additional expenditure of time or resources does not amount to the type of "undue prejudice" contemplated by Rule 15(a). *See Bylin*, 568 F.3d at 1230 ("[T]he expenditure of time, money, and effort alone is not grounds for a finding of prejudice."). In addition, Defendants will have the opportunity to move the Court for extensions if

necessitated by the amendment.[5] Second, although Plaintiff seeks to add new claims, these claims arise from the same general subject matter as the original claims for breach of contract and bad faith. The new claims are not based on an entirely new type of wrongful conduct by Defendants; they are simply additional legal theories of liability arising from the same facts. Therefore, although they may require some additional discovery, the proposed amendments will not effectuate any major shift in the focus of the litigation.

    C.    <u>Futility</u>

"A court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason. . . ." *E. SPIRE Comm'cns, Inc. v. N.M. Public Reg. Comm'n*, 392 F.3d 1204, 1211 (10th Cir. 2004); *Murray v. Sevier,* 156 F.R.D. 235, 238 (D. Kan. 1994) ("If a proposed amendment cannot withstand a motion to dismiss or otherwise fails to state a claim, then the court is clearly justified in denying an amendment on futility grounds."). In considering whether a proposed amendment can withstand a Rule 12(b)(6) motion, a court must determine whether the plaintiff has stated a claim upon which relief may be granted. The inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In order to state a claim, a plaintiff must "'nudge [] [his] claims across the line from conceivable to plausible.'" *Schneider*, 493 F.3d at 1177 (quoting *Twombly*, 127 S. Ct. at 1974). Thus, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this

---

[5] Plaintiff disputes that amendment will necessitate a six month to one year extension of the schedule.

7

plaintiff has a reasonable likelihood of mustering factual support for these claims." *Schneider*, 493 F.3d at 1177. The Tenth Circuit has clarified that "plausible," the term used by the Supreme Court in *Twombly*, does not mean "likely to be true." *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Instead, "'plausibility' in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotation marks omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* In conducting the inquiry, a court must "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Id.*; *see also Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. *Erikson v. Pawnee County Bd. of County Comm'rs*, 263 F.3d 1151, 1154-55 (10th Cir. 2001) (citations omitted).

       1.   *Unjust Enrichment*

Defendants contend that the unjust enrichment claim is futile because the parties' dispute is governed by an express contract. Defendants cite cases standing for the proposition that quasi-contractual remedies, such as unjust enrichment, are not available when an enforceable express contract governs the parties' relationship. *See, e.g., Member Svcs. Life Ins. Co. v. Am. Nat'l Bank & Trust Co. of Sapulpa*, 130 F.3d 950, 957 (10th Cir. 1997). While correct statements of the law, Defendants' cited cases do not mandate a finding of futility. Defendants' reason for denying coverage was that the insurance contract was not in effect at the time of loss. Thus, if Defendants succeed in convincing the Court or jury that no contract existed at the time of Plaintiff's loss, there

is the possibility of a need for a quasi-contractual remedy. Obviously, the unjust enrichment claim is pled in the alternative and will be available only in the event that a contract remedy is not available. However, based on the allegations in this case, which are that Defendants asserted the non-existence of a contract as a reason for denying Plaintiff's claim, Plaintiff's alternative claim for unjust enrichment does not fail as a matter of law. *See MDCM Holdings, Inc. v. Credit Suisse First Boston Corp.*, 216 F. Supp. 2d 251, 261 (S.D.N.Y. 2002) (explaining that a plaintiff may plead inconsistent claims under Federal Rule of Civil Procedure 8(d)(2)) (further explaining that "[w]hether the contracts at issue, in fact, cover the subject matters in controversy has not been determined" and that it was therefore "not appropriate to dismiss the unjust enrichment claim at th[at] time"), *over'd on other grounds by Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116, 123 (2d Cir. 2003).

    2.    *Fraud*

Defendants first contend that the proposed fraud claim is futile because it is an attempt to "recast" a breach of contract claim as a tort. (*See* Resp. to Mot. to Amend 9 (arguing that Plaintiff's allegations are "nothing more than another way of saying that Defendants breached the policy by refusing to provide the coverage stated therein and telling the class members that the coverage would not be provided"). Under the general common law rule, "a claim for fraud must be distinct from a claim for breach of contract." *See Int'l Design Concepts, LLC v. Saks, Inc.*, 486 F. Supp. 2d 229, 237 (S.D.N.Y. 2007) (applying New York law); *see also Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 675 (10th Cir. 2007) (applying Kansas law) (explaining that "the basis of the [fraud] claim must be different from the conduct upon which a breach of contract claim is based" and that "the fraud must have resulted in damages greater than those caused by the breach of contract alone"). Oklahoma

9

law appears to be in accord. *See Multimedia Games, Inc. v. Network Gaming Int'l Corp.*, No. 98-CV-67-H(M), 1999 WL 33914442, at * 7 (N.D. Okla. 1999) (applying Oklahoma law) ("[M]ere allegations of fraud in an action based solely in contract are insufficient to state a cause of action based on fraud."); *Fox v. Overton*, 534 P.2d 679, 681(Okla. 1975) (holding that a petition did not state a cause of action for fraud when it merely alleged that a defendant "fraudulently" refused to complete a sale because the "sum of the allegations" amounted to no more than "a cause in contract"); *cf. Zenith Drilling Corp. v. Internorth, Inc.*, 869 F.2d 560, 565 (10th Cir. 1989) (holding that, in order to support a finding of an "independent, willful tort" in addition to a breach of contract, for purposes of supporting a punitive damages award, a plaintiff must recover actual damages for commission of the tort rather than merely damages for the breach of contract).[6] However, the parties did not cite and the Court did not locate an Oklahoma case setting forth a precise test for determining whether a fraud and breach of contract claim may proceed together.

Applying the test set forth by the Tenth Circuit in *Wade*, which is based on Kansas law, *see Wade,* 483 F.3d at 675,[7] the Court finds that Plaintiff's allegations are sufficient to survive a motion to dismiss because: (1) the alleged conduct underlying Plaintiff's fraud claim is distinct from the alleged conduct underlying Plaintiff's breach of contract claim; and (2) Plaintiff's allegations could potentially support an award of extra-contractual damages. As to conduct underlying the breach of contract allegations, Plaintiff's allegations are simply that the Cancellation Notice "fails to provide

---

[6] For purposes of this motion, Plaintiff does not dispute that this common law rule applies in Oklahoma. Instead, Plaintiff argues that his fraud claim is sufficiently distinct from the breach of contract claim to fall outside the common law rule.

[7] Defendants cited several other cases from other states applying various versions of this common law rule. In absence of an express test set forth under Oklahoma law, the Court will follow the test set forth by the Tenth Circuit in *Wade*.

10

Defendants' insureds with adequate notice of cancellation" and that Defendants therefore "breached the insurance contract each time they used" the Cancellation Notice as a basis to deny claims. (Proposed Am. Pet. ¶¶ 38, 39.) In order to succeed on the contract claim, Plaintiff need not show that Defendants acted with knowledge or recklessness. Instead, Defendants could be in breach even if they acted innocently. In contrast, Plaintiff's allegations supporting the fraud/constructive fraud claim are that Defendants "knew or should have known" that the Cancellation Notice was ineffective. (*Id.* ¶ 53.) Plaintiff therefore alleges more than an innocent breach of contract; Plaintiff alleges that Defendants knew or should have known that the Cancellation Notice was ineffective and intentionally or recklessly proceeded to make representations of non-coverage and/or to conceal benefits owed. The conduct underlying each claim is distinct, and this case is therefore distinguishable from *Wade*. *See Wade*, 483 F.3d at 676 (affirming grant of summary judgment in favor of defendant on fraud claim because the "fraud claim is merely a claim that [the defendant] breached its contractual duty to defend Mr. Wade against claims arising from the accident and that [the plaintiff] was injured by [the defendant's] failure to satisfy its contractual obligation" and that "[s]uch a claim sounds in breach of contract, not fraud."[8]

In addition, Plaintiff seeks to recover punitive damages on the fraud claim. (*See* Proposed Am. Compl. ¶ 57.) As a general matter, Plaintiff seeks pain and suffering and emotional distress damages. (*See* Pl.'s Answers to Interrogs. 17 & 18, Ex. B to Reply in Support of Mot. to Amend.) Thus, the case is again distinguishable from *Wade*, wherein the court granted summary judgment on the fraud claim because "[t]he damages claimed under the breach of contract claim and the fraud

---

[8] The case is also distinguishable from *Isler v. Texas Oil & Gas Corporation*, 749 F.2d 22, 24 (10th Cir. 1984), cited by Defendants, in which the court reversed a tort judgment in favor of the plaintiffs because the "facts alleged in plaintiffs' tort claim are precisely the same as those alleged in their contract claim."

11

claim are identical" and the "damages arising from this injury were recoverable under the breach of contract claim." *See Wade*, 483 F.3d at 676.

Defendants also contend that the fraud claim is futile based on a common law rule that "[a]n action for fraud may not be predicated on false statements when the allegedly defrauded party could have ascertained the truth with reasonable diligence." *Silver v. Slusher*, 770 P.2d 878, 882 n.8 (Okla. 1988); *see Slover v. Equitable Variable Life Ins. Co.*, 443 F. Supp. 2d 1272, 1282 (N.D. Okla. 2006). Defendants argue that Plaintiff could not have detrimentally relied on Defendants' alleged "misrepresentation" of non-coverage because he had the ability to ascertain for himself that this statement was false.

Rule 12(b)(6) dismissal would not be proper based on this common law rule regarding a plaintiff's ability to ascertain the truth. The alleged factual misrepresentation of non-coverage is based, at least in part, on the ineffectiveness of the Cancellation Notice in light of relevant Oklahoma statutes and case law. (*See* Proposed Am. Pet. ¶¶ 19-20.) In the Court's view, this type of misrepresentation is distinguishable from an alleged misrepresentation that is clearly contradicted by the insurance policy. *See Slover*, 443 F. Supp. 2d at 1282 (holding that plaintiffs could not have reasonably relied on statements by an insurer "to the effect that future premiums could be paid by dividends or cash value" when such statements were "expressly contradicted" by the terms of the insurance policy). Further, the Court is unwilling to find, at the motion to dismiss stage, that Plaintiff "could have ascertained the truth" (that he was actually still entitled to coverage due to the impact of Oklahoma statutory and case law) with "reasonable diligence" or that the means of ascertaining such knowledge was "equally available to both parties." *See Silver*, 770 P.2d at 882 n.8.

Defendants further argue that the fraud claim is futile because the proposed allegations lack the particularity required by Federal Rule of Civil Procedure 9(b). "The purpose of Rule 9(b) is to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based." *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (internal quotations omitted). "[A] complaint must set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Id.* (internal quotation omitted).

The Court finds that the alleged misrepresentation is sufficiently identified by time, place, and content for purposes of Rule 9(b). (*See* Proposed Am. Pet. ¶¶ 8, 16-22, 50-56.) The alleged misrepresentation is the statement of non-coverage; it occurred on the date that Defendants denied Plaintiffs' claim; and it occurred at the place Plaintiff received the written denial of claims. As to Defendants' argument that the allegations are not specific as to which Defendant made what representation, *see Schwartz*, 124 F.3d at 1253 (explaining that Rule 9(b) "requires that a complaint set forth the identity of the party making the false statements, that is, which statements were allegedly made by whom"), the allegations are clear that Plaintiff seeks to hold all "Defendants" liable for the same misrepresentation. (*See* Proposed Am. Petition ¶¶ 50, 53.) This is simply not a case where Defendants are without notice as to the precise misrepresentation for which Plaintiff seeks to hold them responsible; there is essentially only one type of misrepresentation that all Defendants repeatedly made.

Finally, Defendants contend that the fraud claim is futile as a class claim because it cannot satisfy the typicality or superiority and predomination requirements of Federal Rule of Civil Procedure 23. The Court finds no reason to address this argument at this stage. The question

13

presented for purposes of Rule 15(a) is whether allowing Plaintiff's proposed fraud claim is altogether futile, and the Court finds that it is not. Whether or not the fraud claim will succeed as a class claim is a question better reserved for later stages of the proceedings.

### 3. *Injunctive Relief*

Plaintiffs propose to seek the following injunctive relief: (1) prohibiting Defendants from using the Cancellation Notice; (2) prohibiting Defendants from relying upon the Cancellation Notice to deny specific types of coverage; and (3) requiring Defendants to "re-open the claim(s) of Plaintiff and the Class Members, evaluate, adjust and pay Plaintiff and the Class Members all . . . benefits that should/would have been paid . . . but for reliance upon" the Cancellation Notice. (*See* Proposed Am. Pet. ¶¶ 67-69.) Defendants argue that this proposed amendment is futile because Plaintiff has an adequate remedy at law. (*See* Resp. to Mot. to Amend 20 ("If the Court determines that Defendants' cancellation of any of the policies was ineffective, the insured can be adequately compensated by an award of monetary damages.").) Plaintiff argues that Defendants will likely assert that money damages cannot be assessed, and that it is permissible to assert an alternative claim for injunctive relief. As with the unjust enrichment claim, the Court finds that claims for money damages and injunctive relief can be pled in the alternative and that it is premature to determine whether one of the claims fails as a matter of law. *See* Fed. R. Civ. P. 8(d)(2). Accordingly, the claim for injunctive relief is not futile.

### III.     FIE's Motion to Dismiss

FIE moved for dismissal pursuant to Rule 12(b)(6).[9] FIE argues that it should be dismissed from the case because (1) it is not a party to any relevant insurance contract entered into by Plaintiff, and (2) Plaintiff's Petition does not contain any allegations regarding FIE's involvement with the handling of Plaintiff's claim. Plaintiff contends that FIE may be held liable for both bad faith and breach of contract based on the Oklahoma Supreme Court's decision in *Badillo v. Mid Century Insurance Company*, 121 P.3d 1080 (Okla. 2005). As explained above, the Court will allow Plaintiff to file an Amended Complaint in the form attached as Exhibit 2 to his Motion to Amend. Accordingly, the Court construes FIE's Motion to Dismiss as one to dismiss the first two claims asserted against it in the proposed Amended Complaint.[10]

In *Badillo*, a plaintiff sued MCIC and FIE for bad faith. After the trial evidence, FIE moved for a directed verdict because "it was not a party to the insurance contract between MCIC and the insured, i.e., because FIE was not the named insurer on the policy, it was not subject to liability or suit for breach of the duty of good faith and fair dealing toward insured." *Id.* at 1101. The trial court denied the motion for directed verdict, and the Oklahoma Supreme Court affirmed. The court reasoned:

> Although normally it is only the actual insurer that owes the duty of good faith and fair dealing to its insured and a cause for breach of the duty will not lie against a stranger to the insurance contract, these normal rules are not absolutes; there are exceptions. When a non-party to the insurance contract, based on the specific facts and circumstances existent, engages in activities or conduct such that it may be found to be acting sufficiently like an insurer so that a special relationship can be said to

---

[9] For the governing Rule 12(b)(6) standard, see *supra* Part II.C.

[10] The relevant allegations regarding FIE are similar if not identical in both the Petition and the proposed Amended Complaint, and the Court finds no reason to delay ruling or require FIE to file an additional motion to dismiss related to the Amended Complaint.

15

> exist between the entity and the insured, we have made it clear that imposition upon said entity of the same duty of good faith and fair dealing as that imposed on the actual insurer issuing the insurance policy is appropriate.

*Id.* (internal citations omitted). The evidence at trial showed that "FIE employees handled the claim and adjusted the claim, that MCIC and FIE are affiliated companies, both under the umbrella of the Farmers Insurance Group of Companies, and that FIE and MCIC acted as one entity in regard to insured's policy relating to the [] claim." *Id.* Under these circumstances, FIE was not entitled to a directed verdict and could indeed be found liable for bad faith. *Badillo* makes clear that a non-party to an insurance contract can, under certain circumstances, be held liable for bad faith. Thus, FIE's argument that a non-party to an insurance contract can never be liable for bad faith must be rejected.

FIE attempts to avoid the holding in *Badillo* by arguing that "Plaintiff's Petition is completely bare of any allegations with respect to FIE's relationship to the other insuring defendants and, more importantly, FIE's involvement with Plaintiff's claim." (Reply to Pl.'s Supp. Resp. to Mot. to Dismiss 3.) However, the Court finds Plaintiff's allegations sufficient to survive a motion to dismiss. The proposed Amended Complaint allege that FIE is an "insurance exchange." The proposed Amended Complaint further alleges that all "Defendants," including FIE, wrongfully denied Plaintiff's claim. Plaintiff has therefore sufficiently alleged that FIE engaged in activities or conduct "such that it may be found to be acting sufficiently like an insurer." *See Badillo*, 121 P.3d at 1101. Although Plaintiff certainly must conduct discovery and offer proof as to the precise role played by FIE in the denial of claims, the Court finds that Plaintiff's allegations against FIE are

16

sufficient to show that Plaintiff plausibly has a claim for relief against FIE for breach of contract and bad faith.[11]

Plaintiff's Motion To Amend Petition (Doc. 27) is GRANTED. The Motion to Dismiss of Defendant Farmers Insurance Exchange (Doc. 2) is DENIED.

**ORDERED THIS 24th day of November, 2009.**

_____
**TERENCE KERN**
**UNITED STATES DISTRICT JUDGE**

---

[11] *Badillo* did not specifically address whether a non-party to an insurance contract can also be held liable for the underlying breach of contract. However, neither party's briefs separately addressed the breach of contract and bad faith claims or specifically discussed whether and under what circumstances a non-party to an insurance contract may nonetheless be held liable for breach of contract (as opposed to bad faith). For purposes of this Motion to Dismiss only, the Court assumes that *Badillo*'s reasoning extends to FIE's liability for the underlying breach of contract. However, the Court would entertain further briefing on this question at later stages of the proceedings.